# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ERNEST ARMSTRONG,            )
                             )
          Plaintiff,         )
                             )
     v.                      )        1:14CV346
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social)
Security,                    )
                             )
          Defendant.         )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Ernest Armstrong, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (See Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 8, 11). For the reasons that follow, the Court should enter judgment for Defendant.

**PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of January 1, 2005. (Tr. 141-47.) Upon denial of that application initially (Tr. 58-68, 87-90) and on reconsideration (Tr. 69-85, 95-102), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 103-04). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 24-57), at which Plaintiff amended his alleged onset date to September 5, 2009, his 50th birthday (see Tr. 28, 162). The ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 7-19.) The Appeals Council thereafter denied Plaintiff's request for review, thus making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-4.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on June 30, 2010.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of September 5, 2009 through his date last insured of June 30, 2010.
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome, right meniscus tear, diabetes mellitus, depression, and post-traumatic stress disorder.
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
> 5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except only occasional climbing stairs or

> ramps; occasional bending, balancing, stooping, crawling, kneeling, or crouching; never climbing ropes, ladders or scaffolds; avoid hazardous machinery and vibrations; occasional overhead reaching bilaterally; frequent but not constant, fingering, grasping or handling bilaterally; requires a sit/stand/adjust option as necessary for comfort without a loss of production; simple, routine, repetitive tasks; and occasional contact with co-workers and the general public.
>
> . . .
>
> 6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.
>
> . . .
>
> 10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.
>
> . . .
>
> 11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from September 5, 2009, the alleged onset date, through June 30, 2010, the date last insured.

(Tr. 12-19 (internal parenthetical citations omitted).)

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. Supplemental Security Income . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

7

## B. Assignment of Error

In Plaintiff's sole assignment of error, he contends that "[t]he ALJ improperly evaluated Plaintiff's knee impairments and the medical necessity of his assistive devices when assessing the RFC." (Docket Entry 9 at 4.) In particular, Plaintiff faults the ALJ for failing to "engage[] in [a] function by function analysis or an actual assessment of [Plaintiff's] credibility regarding his knee impairments" (id.), and for making only a "conclusory statement that [Plaintiff's] knee impairments allow for the performance of light work" (id. at 5). According to Plaintiff, "[t]he only activity which the ALJ pointed to in arguing that [Plaintiff] was not credible regarding this physical limitations was his driving a car 6 to 20 miles before he became uncomfortable." (Id. at 8 (citing Tr. 17).) Plaintiff maintains that driving a car for that type of distance "is 'so undemanding that [it] cannot be said to bear a meaningful relationship to the activities of the workplace'" (id. (citing Orn v. Astrue, 495 F.3d 627, 639 (9th Cir. 2007)), and "does not demonstrate that [Plaintiff] is capable of the standing and walking requirements of light work" due to its performance while sitting (id.). Moreover, Plaintiff contends that the ALJ improperly analyzed the medical

---

at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

necessity of Plaintiff's cane and motorized scooter under Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *7 (July 2, 1996) ("SSR 96-9P") (Docket Entry 9 at 5, 6-7), and that light work "requir[ing] standing and walking for 6 hours out of an 8 hour workday . . . is clearly unrealistic for an individual who uses a cane to ambulate and was prescribed a motorized scooter by his doctor" (id. at 7). Finally, Plaintiff "note[s] that the ALJ gave no consideration to [Plaintiff's] left knee pathologies" in determining the RFC, including an August 2012 MRI which reflected a meniscal tear in his left knee. (Id. (citing Bird v. Commissioner of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012) (holding that ALJ should consider medical evaluations post-dating claimant's date last insured because such evaluations can "reflect[] . . . possible earlier and progressive degeneration").) Plaintiff's contentions warrant no relief.

Substantial evidence supports the ALJ's evaluation of the medical evidence regarding Plaintiff's knee impairments. The ALJ initially observed that "[t]he evidence of record for the period in question from the amended onset date of September 5, 2009 through the date last insured of June 30, 2010 is limited." (Tr. 15.) Indeed, the record reflects just three office visits to the

9

Veterans Administration Medical Center ("VAMC") between September 5, 2009, and June 30, 2010, none of which involved complaints of or treatment for knee pain: (1) on October 23, 2009, Plaintiff presented with complaints of epigastric burning and left costovertebral angle ("CVA") pain (Tr. 600-06);[5] (2) on November 24, 2009, Plaintiff complained of head and back pain, along with anger, mood swings, and depression (see Tr. 587-90); and (3) on December 11, 2009, Plaintiff reported sinus congestion and pressure, joint pain, dizziness, and a problem sleeping on his left side (Tr. 569-77).

Given the absence of evidence relating to Plaintiff's knee impairments during the relevant period, the ALJ gave Plaintiff the benefit of the doubt and considered records reflecting Plaintiff's right knee arthroscopy in January of 2004, over five years prior to the amended onset date, and an MRI of Plaintiff's right knee in June of 2011, nearly one year after the date last insured:

> The available record shows that [Plaintiff] has a history of a right meniscus tear for which he had surgery on January 9, 2004. However, the record shows that since that surgery [Plaintiff] has [been] treated with conservative methods including pain medications. An MRI of [Plaintiff's] right knee taken after the date last insured in June 2011 did show a complex tear in the medial meniscus. Therefore, the undersigned limited [Plaintiff] to the light exertional level with a sit/stand/adjust option.

---

[5] The costovertebral angle consists of "the angle formed on either side of the vertebral column, between the last rib and the lumbar vertebrae." See Elsevier Saunders, Dorland's Illustrated Medical Dictionary 88 (3d ed. 2012).

(Tr. 15 (internal record citations omitted).) The ALJ did not fail to discuss any material evidence relating to Plaintiff's knee impairment and amply accommodated any limitation arising from Plaintiff's knee pain by limiting him to light work and including the sit/stand/adjust option.

Plaintiff's challenge to the ALJ's assessment of Plaintiff's credibility, i.e., that the assessment hinged solely on Plaintiff's ability to drive for 6 to 20 miles, understates the scope of the ALJ's analysis. (See Docket Entry 9 at 8.) Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186, at *2 (July 2, 1996) ("SSR 96-7p"), as applied by the Fourth Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Id.</u> at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent

11

to which they affect his or her ability to work. Id. at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

In this case, the ALJ found for Plaintiff at part one of the inquiry, but ruled, in connection with part two, that his statements about the degree of his symptoms lacked credibility in so far as he claimed a level of impairment that would prevent him from performing a range of light work. (Tr. 15.) After discussing Plaintiff's testimony regarding the location and intensity of his pain, the objective medical evidence regarding his alleged impairments, and treatments Plaintiff had sought to relieve his pain (see Tr. 15-16), the ALJ concluded as follows:

> While [Plaintiff] alleges disabling limitations due to his impairments, the objective medical evidence fails to support such a finding in this case. The record shows that [Plaintiff] received only conservative care with no major exacerbations of pain or inpatient treatment required during the period in question. Further, the record contains evidence that [Plaintiff's] mental health conditions are controlled with medication. In addition, evidence regarding [Plaintiff's] daily activities is not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Plaintiff] alleges that he has to walk with the assistance of a cane, but admits that it is not

12

> prescribed. <u>[Plaintiff] also alleges constant neck pain but admits that he continues to be able to drive 6 to 20 miles comfortably</u>. Consideration of these factors also leads the undersigned to conclude that [Plaintiff's] allegations of disabling symptoms and limitations cannot be accepted, and that the [RFC] finding in this case is justified.

(Tr. 17 (internal record citations omitted) (emphasis added); <u>see also</u> Tr. 13 ("In activities of daily living, [Plaintiff] had mild restriction."), 191 (acknowledging that he showers, stays home alone, and drives downtown).) The ALJ's evaluation of Plaintiff's credibility thus covered the full range of factors required by the regulations, <u>Craig</u>, and SSR 96-7p. Moreover, although Plaintiff argues that the ALJ erred by predicating his evaluation of Plaintiff's credibility regarding his <u>knee impairment</u> on his ability to drive 6 to 20 miles because driving does not reflect Plaintiff's ability to stand or walk (<u>see</u> Docket Entry 9 at 8), as the underlined portion of the quoted excerpt above demonstrates, the ALJ relied on Plaintiff's driving ability to discount his allegations of <u>neck pain</u>, not knee pain (<u>see</u> Tr. 17).

Plaintiff's contention that the ALJ improperly analyzed the medical necessity of Plaintiff's cane and motorized scooter similarly fails. The ALJ explicitly considered Plaintiff's use of a cane both at the hearing (<u>see</u> Tr. 40, 46), and in the ALJ's decision (<u>see</u> Tr. 15 (acknowledging Plaintiff's testimony he walks with cane), 17 (noting Plaintiff's admission cane not prescribed)). However, no physician of record prescribed or opined as to the

13

medical necessity of the cane. (See generally Tr. 285-1527.) Under such circumstances, the ALJ did not err by discounting the impact of Plaintiff's cane on the RFC formulation. See SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).").

Plaintiff also faults the ALJ for failing to take into consideration Plaintiff's alleged need for a motorized scooter. (Docket Entry 9 at 6-7.) However, Plaintiff's VAMC providers authorized the provision of a motorized scooter for Plaintiff on December 9, 2011, nearly a year and a half past Plaintiff's date last insured. (See Tr. 1125.) Further, the kinesiotherapist encouraged Plaintiff "to continue activity as he can tolerate," and concluded that Plaintiff needed "power mobility . . . for extended distances," but did not indicate the necessity of the scooter for shorter distances. (See id.) Given the timing of the authorization and the limitation on the necessity of the scooter to extended distances, the ALJ did not err by failing to discuss Plaintiff's claimed need for the motorized scooter.

14

Finally, Plaintiff claims that the ALJ failed to take into account Plaintiff's left knee pathologies in formulating the RFC. (See Docket Entry 9 at 7-8.) In that regard, Plaintiff relies on an August 3, 2012 MRI of his left knee which reflected a meniscal tear. (See id. at 7 (citing Tr. 1371-73).) According to Plaintiff, the ALJ should have considered this evidence despite its occurrence over two years after Plaintiff's date last insured because such evidence could "be 'reflective of a possible earlier and progressive degeneration,'" citing Bird, 699 F.3d at 341. (Docket Entry 9 at 7.) However, although Plaintiff complained of pain in both knees and a VAMC orthopedist diagnosed <u>mild degenerative joint disease</u> in both of Plaintiff's knees on July 1, 2009,[6] prior to his date last insured, the orthopedist noted full range of motion in both knees and no effusion, and recommended no surgery and only medication management for any resultant symptoms. (Tr. 633.) Moreover, the record lacks <u>any</u> evidence that Plaintiff suffered from a meniscal tear in his left knee until the August 2012 MRI. Because nothing in the record links Plaintiff's meniscal tear in 2012 to a pre-date last insured left knee impairment, the ALJ did not err in failing to discuss (or account in the RFC for) Plaintiff's left knee condition. See Bird, 699 F.3d at 341 ("Our more recent decision in Johnson v. Barnhart, 434 F.3d 650 (4th Cir.

---

[6] Although an x-ray of Plaintiff's right knee on April 16, 2009 showed mild degenerative joint disease (see Tr. 407-08), the record does not reflect that Plaintiff underwent any imaging studies of his left knee at that time (see Tr. 406-27).

15

2005), is further instructive of the principles we articulated in <u>Moore</u>[v. Finch, 418 F.2d 1224 (4th Cir. 1969)]. In <u>Johnson</u>, after the SSA administrative hearing had concluded, the claimant's treating physician submitted a new assessment identifying additional impairments that were not linked in any manner to the claimant's condition before her [date last insured]. <u>Id.</u> at 656 & n.8. Because there was no evidence that these impairments existed before the claimant's [date last insured], we held that the evidence was not relevant, and that the ALJ was not required to give the new assessment retrospective consideration. <u>Id.</u> at 655-56. Thus, our holding in <u>Johnson</u> reinforces the principle applied in <u>Moore</u> that post-[date last insured] medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-[date last insured] condition. <u>See</u> <u>Moore</u>, 418 F.2d at 1226.").

In sum, Plaintiff's assignment of error lacks merit.

## **CONCLUSION**

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) be denied, that

16

Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

                                                                      /s/ L. Patrick Auld
                                                                         **L. Patrick Auld**
                                                     **United States Magistrate Judge**

November 4, 2015